UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HARRY BLAKE | Criminal No. 3:16CR111 (JBA)<br><br>August 20, 2018 |

**RULING ON MOTION TO SUPPRESS**

Defendant Harry Blake moves to suppress all cell site location information for phone number 203-726-1581, which was obtained by law enforcement in this case. (Mot. Suppress [Doc. # 384].) Defendant contends that this evidence was obtained in violation of Mr. Blake's rights under the Fourth Amendment to the U.S. Constitution.

The government obtained cell site location information ("CSLI") for this number on two occasions—first, on June 29, 2015, when the government filed an application with this Court pursuant to 18 U.S.C. § 2703, the Stored Communications Act, for the period of March 9, 2015 through October 15, 2015, and second, on June 30, 2016, via an order of the Connecticut Superior Court, for such CSLI for the period of July 25 through July 27, 2015, meaning, as Defendant notes, that "at the time of the state application, the government already had in its possession the same information" from the earlier, federal application.

On June 22, 2018, the U.S. Supreme Court held in *Carpenter v. U.S.* that because "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI[,]" the location information obtained from the defendant's wireless carriers "was the product of a search." 138 S. Ct. 2206, 2217 (2018). "Having found that the

acquisition of Carpenter's CSLI was a search," the Supreme Court "also conclude[d] that the Government must generally obtain a warrant supported by probable cause before acquiring such records[,]" and that the showing made by the government to obtain a court order under the Stored Communications Act "falls well short of the probable cause required for a warrant." *Id.* at 2221.

Defendant Blake contends that his case "raises precisely the same issue" and for that reason, Defendant maintains that "the Supreme Court's finding in *Carpenter* compels suppression of this evidence . . . ." (Mem. Supp. Mot Suppress [Doc. # 385] at 2.) In response, the Government argues that the motion to suppress should be denied without a hearing because, in its application under the Stored Communication Act, the Government "undertook a statutorily sanctioned process, which has only recently been invalidated by the *Carpenter* decision" and that in acquiring this data, the Government "permissibly relied in good faith" on this "vehicle[] for acquisition of the subject cell site information." (Gov.'s Resp. to Mot. Suppress [Doc. # 386] at 2.)

As the Government notes, Defendant "does not dispute that the government showing was sufficient to support the Court's granting of the relief sought" under the statutory framework. (*Id.* at 3.) And the Government argues that in using this process, "the government acted in good faith on a facially valid statutory scheme created by Congress for the express purpose for which the government sought to use it." (*Id.*)

As the Supreme Court has held, "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful," the " 'deterrence rationale [of suppression] loses much of its force' and exclusion cannot 'pay its way.' " *Davis v. United States*, 564 U.S. 229, 238 (2011) (citations omitted). This "good-faith exception" has been expressly extended to "searches conducted in reasonable reliance on subsequently invalidated statutes." *Id.* at 239 (citing *Illinois v. Krull*, 480 U.S. 340 (1987)). As the Supreme Court held in *Krull*, "[u]nless a statute is clearly

2

unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law." 480 U.S. at 349–50.

Since *Carpenter* was decided, the Court is aware of five other district courts—in the Third, Sixth, Seventh, and Ninth Circuits—to have addressed this precise question, as well as the Court of Appeals for the Fourth Circuit. Every one of these courts, writing in the seven weeks since *Carpenter* was decided, has declined to suppress evidence arising out of a pre-*Carpenter*, routine acquisition of cell site location information pursuant to the Stored Communications Act. *See United States v. Chavez*, 894 F.3d 593, 608 (4th Cir. 2018) ("investigators . . . reasonably relied on court orders and the Stored Communications Act in obtaining the cell site records[,]" accordingly, "the good-faith exception to the exclusionary rule applies"); *United States v. Darmon Vonta Shaw*, No. CR 5:17-26-KKC, 2018 WL 3721363, at *1 (E.D. Ky. Aug. 3, 2018) (same); *United States v. Rojas-Reyes*, No. 116CR00123TWPDML, 2018 WL 3439092, at *4 (S.D. Ind. July 17, 2018) (same); *United States v. Kevin Coles*, No. 1:16-CR-212, 2018 WL 3659934, at *2 n.3 (M.D. Pa. Aug. 2, 2018) (same); *United States v. James Deshawn Williams*, No. 217CR20758VARDRG, 2018 WL 3659585, at *3 (E.D. Mich. Aug. 2, 2018) (same); *United States v. Chavez*, No. 15-CR-00285-LHK, 2018 WL 3145706, at *5–6 (N.D. Cal. June 26, 2018) (in case involving 2011 court order, the good-faith exception likely applies given the absence of binding authority requiring probable cause prior to *Carpenter*).

Conversely, the Court is not aware of any cases reaching the opposite result. Defendant does not acknowledge or address this adverse authority but argues in his reply, citing *Krull*, that the good-faith exception does not apply to reliance upon a statute whose "provisions are such that a reasonable officer should have known that the statute was unconstitutional." (Reply to Gov.'s Resp. to Mot. Suppress [Doc. # 387] at 3 (citing 480 U.S. at 355).) Defendant contends that

*Carpenter* "did not come out of the blue" and that a reasonable officer should have seen the writing on the wall after the Supreme Court's decisions in *Kyllo v. U.S.*, 533 U.S. 27, 34 (2001) (holding that the use of a thermal imager to detect heat radiating from home was a search), *U.S. v. Jones*, 565 U.S. 400 (2012) (holding that installation of a GPS device on a target's vehicle constituted a search), and *Riley v. California*, 134 S. Ct. 2473 (2014) (holding that police must generally obtain a warrant before searching the contents of a phone).

While Defendant's citations of *Kyllo* and *Riley* do not appear applicable to the question at hand, *Jones* did involve relevant issues and discussion of when and whether GPS monitoring might constitute a search. While the *Jones* majority opinion focused on the physical trespass in its Fourth Amendment analysis, five justices also agreed that even in the absence of a physical trespass, " 'longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy.' " 565 U.S. 400, 415 (Sotomayor, J., concurring (quoting Alito, J. dissenting)). Justice Sotomayor—who provided the fifth vote for the majority opinion—effectively concurred in aspects of both the majority opinion—holding that the installation of a GPS tracker was a search because of the physical trespass—and in the dissent, arguing that the Fourth Amendment would be implicated in the case of long-term GPS monitoring even absent a physical trespass. But no language in *Jones*—not in the main opinion, or Justice Sotomayor's concurrence, or the part of Justice Alito's dissent in which Justice Sotomayor joined and provided a fifth vote for—made clear before *Carpenter* that non-trespassory GPS monitoring would be treated as a "search" for Fourth Amendment purposes going forward. Justice Sotomayor clearly suggested that she joined the dissent in thinking that the Court should eventually reach that result, but she expressly declined to reach the issue in *Jones*, noting that "[r]esolution of these difficult questions in this case is unnecessary, however, because the Government's physical intrusion on Jones' Jeep supplies a

narrower basis for decision." 565 U.S. at 418 (Sotomayor, J., concurring). Accordingly, Defendant's effort to ground his suppression motion here on this basis is unavailing. Finally, Defendant concedes that at the time the government applied for the federal Order in this case, no Court of Appeals had yet held that accessing cell site location information constituted a search under the Fourth Amendment, and relies primarily upon district court decisions around the country that suggested before *Carpenter* that this type of application required a showing of probable cause. The court finds the Defendant's reference to these several district court decisions unconvincing with respect to the suppression sought in the context of this case. Because Defendant has not shown that a reasonable officer would have understood prior to *Carpenter* that a showing of probable cause was required to acquire historical CSLI, the Government here reasonably relied in good faith on the Stored Communications Act, and Defendant's Motion to Suppress is DENIED.

Because the Court finds that suppression is not warranted with respect to the fruits of the federal court Order at issue here, the Court declines to reach the issue of the state court order, which produced no new information with respect to the Defendant.

IT IS SO ORDERED.



Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 20th day of August 2018.